Eric A. Liepins
ERIC A. LIEPINS, P.C.
12770 Coit Road
Suite 1100
Dallas, Texas 75251
(972) 991-5591
(972) 991-5788 - telecopier

ATTORNEYS FOR DEBTOR

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE | § | |
| | § | |
| BRITLIND OIL, LLC | § | Case no.18-33963 -11 |
| | § | |
| | § | CHAPTER 11 |
| DEBTOR | § | |

**PLAN OF REORGANIZATION OF BRITLIND OIL, LLC DATED MAY 27, 2019**

TO:    ALL PARTIES-IN-INTEREST, THEIR ATTORNEYS OF RECORD AND TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

COME NOW, Britlind Oil, LLC., Debtor and Debtor-in-Possession in the above-referenced bankruptcy cases, and proposes the following Plan of Reorganization ("Plan"). The Plan proposes segregation of the Creditors and Equity Interest Holders of the Debtor into 10 separate classes.

## ARTICLE I
**DEFINITIONS**

Unless the context otherwise requires, the following capitalized terms shall have the meanings indicated when used in this Plan and in the accompanying Disclosure Statement, which meaning shall be equally applicable to both the singular and plural forms of such terms. Any term in this Plan that is not defined herein but that is used in title 11, United States Code ("Code") shall have the meaning assigned to such term in the Code.

1.    "**Administrative Claim**" shall mean those Claims entitled to priority under the provisions of Section 507 of the Code, pursuant to a claimed and allowed administrative expense priority under Section 503(b) of the Code.

2. "**Allowed Claim**" as to all Classes, hereinafter specified, shall mean a Claim against Debtor (a) for which a Proof of Claim has been timely filed with the Court by the Bar Date, or, with leave of the Court and without objection by any party-in-interest, late-filed and as to which neither the Debtor nor any party-in-interest files an objection or as to which the Claim is allowed by Final Order of the Court, or (b) scheduled in the list of creditors, as may be amended, prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof has been interposed through closing of this case, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending. This category includes all Claims deemed unsecured pursuant to §506(a) of the Code. When "Allowed Claim" is used in the context of a Secured Claim, the provisions of §506(b) of the Code shall also apply.

3. "**Allowed Secured Claim**" shall mean an Allowed Claim secured by a lien, security interest, or other encumbrance on the properties owned by the Debtor, which lien, security interest, or other encumbrance has been properly perfected as required by law, to the extent of the value of the property encumbered thereby. That portion of such Claim exceeding the value of the security held therefor shall be an Unsecured Claim, as defined below and determined pursuant to 11 U.S.C. §506(a).

4. "**Allowed Unsecured Claim**" shall mean an unsecured Claim against Debtor (a) for which a Proof of Claim has been timely filed with the Court by the Bar Date, or, with leave of the Court and without objection by any party-in-interest, late-filed and as to which neither the Debtor nor any party-in-interest files an objection or as to which the Claim is allowed by Final Order of the Court, or (b) scheduled in the list of creditors, as may be amended, prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof has been interposed through closing of this case, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending. This category includes all Claims deemed unsecured pursuant to §506(a) of the Code.

5. "**Bar Date**" shall mean the date fixed by the Court as the last date for filing all Claims in this case other than Administrative and Priority Claims or Rejection Claims.

6. "**Case**" shall mean this Chapter 11 case.

7. "**Claim**" shall mean any right to payment from the Debtor as of the date of entry of the Order Confirming Plan whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured or can be asserted by way of set-off. Claim includes any right or cause of action based on a pre-petition monetary or non-monetary default.

8. "**Claimant**" shall mean the holder of a Claim.

9. "**Class**" shall refer to a category of holders of Claims or interests which are "substantially similar" as provided for in Section 1122 of the Code.

10. "**Code**" shall mean the United States Bankruptcy Code, being title 11 of the United States Code, as enacted in 1978 and thereafter amended.

11. "**Confirmation**" or "**Confirmation of this Plan**" shall mean entry by the Court of an Order confirming this Plan at or after a hearing pursuant to Section 1129 of the Code.

12. "**Confirmation Date**" shall mean the date on which the Court enters an Order confirming this Plan.

13. "**Court**" shall mean the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, presiding over this Chapter 11 reorganization case, or any successor court of competent jurisdiction.

14. "**Creditor**" shall mean any person having a Claim against Debtor.

15. "**Debt**" shall mean any obligation of Debtor, alone, and any obligation of Debtor and any other Person, to any Entity.

16. "**Debtor**" shall mean Britlind Oil, LLC.

17. "**Disbursing Agent**" shall mean the Reorganized Debtor.

18. "**Effective Date**" shall mean ninety days after the Final Confirmation Date.

19. "**Entity**" shall include Person, estate trust, governmental unit and the United States Trustee.

20. "**Equity Interest Holders**" shall mean holders of the equity interests in the Debtors.

21. "**Final Confirmation**" shall mean that date which is fourteen (14) days following the entry of the Order Confirming Plan, during which period of time no Notice of Appeal is filed, or if a Notice of Appeal is filed, during which period of time no Motion for Stay Pending Appeal is granted or supersedeas bond is approved and filed.

22. "**Order Confirming Plan**" shall mean the Order of the Court determining that this Plan meets the requirements of Chapter 11 of the Code and is entitled to confirmation under Chapter 11 of the Code.

23. "**Petition Date**" shall mean the date on which the Debtor filed this proceeding, November 7, 2018.

24. "**Plan**" shall mean this Plan of Reorganization in its present form or as it may be amended, modified or supplemented.

25. "**Priority Claim**" shall mean any Claim entitled to priority pursuant to Section 507(a)

of the Code except for Tax Claims and Claims incurred by the Debtor post-petition in the ordinary course of business.

26.  "**Rejection Claim**" shall mean any Claim arising out of the rejection of a lease or executory contract pursuant to Section 365 of the Code, which Claim shall be treated as an Unsecured Claim.

27.  "**Reorganized Debtor**" shall mean the entity which shall assume title to and control of the Debtors' assets and liabilities upon confirmation as provided herein.

28.  "**Secured Claim**" shall mean an Allowed Claim secured by a lien, security interest, or other encumbrance on the properties owned by the Debtor, which lien, security interest, or other encumbrance has been properly perfected as required by law, to the extent of the value of the property encumbered thereby.  That portion of such Claim exceeding the value of the security held therefor shall be an Unsecured Claim, as defined below and determined pursuant to 11 U.S.C. §506(a).

29.  "**Substantial Consummation**" shall occur upon Reorganized Debtor's commencement of payments to creditors as provided in this Plan.

30.  "**Tax Claims**" shall mean any Claim entitled to priority under Section 507(a)(8) of the Code and shall include the claims of taxing authorities for taxes owed on the property retained by the Debtor under this Plan.

31.  "**Unsecured Claim**" shall mean any Allowed Claim, whether or not liquidated or contingent other than a Priority Claim, a Tax Claim, or a Secured Claim.

## ARTICLE 2
## CERTAIN GENERAL TERMS AND CONDITIONS

The following general terms and conditions apply to this Plan:

2.1  Claims and Debts:  Various types of Claims and Debts are defined in this Plan.  This Plan is intended to deal with all Claims and Debts against the Debtor of whatever character whether or not contingent or liquidated and whether or not allowed by the Court pursuant to Section 502(a) of the Code and all Claims and Debts will receive the treatment afforded in Articles of this Plan.  Claims and Debts incurred by the Debtor post-petition, including ad valorem taxes, in the ordinary course of business will be paid by the Debtor according to their terms as they come due.

2.2  **Securities Laws**:  The issuance of any security in satisfaction of indebtedness under this Plan may be exempt from registration under certain State and Federal securities laws by virtue of Section 1145 of the Code and the exemption therein contained.

2.3  **Time for Filing Claims**:  With respect to those Claims that have been identified in the Schedules filed pursuant to Section 521(1) of the Code and which have been scheduled as "disputed," "contingent," or "unliquidated," said Claimants must file a proof of claim bearing the

case number of the above-styled and referenced proceeding with the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, on or before the Bar Date to participate under this Plan.  Claims scheduled as disputed, contingent, or unliquidated filed after the Bar Date shall not be allowed, and shall not participate in the distributions contemplated by this Plan.  Claims arising from rejection of a lease or executory contract and administrative claims shall be filed with the Court within thirty (30) days following the Confirmation Date of this Plan.

2.4    **Modifications to Plan**:  In accordance with Bankruptcy Rule 3019, to the extent applicable, this Plan may be modified upon application of Debtor or corrected prior to Confirmation without notice and hearing and without additional disclosure pursuant to Section 1125 of the Code provided that, after hearing on and notice to the creditors, the Court finds that such modification does not materially or adversely affect any Creditor or Class of Creditor.

## ARTICLE 3
## TREATMENT OF UNCLASSIFIED CLAIMS
## (CERTAIN ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS)

3.1    All trade and service debts and obligations, including ad valorem taxes for year 2019, incurred in the normal course of business by the Debtor on or after the Petition Date will be paid when due in the ordinary course of the Debtor's business unless a different time for payment is specified in this Plan.

3.2    Each governmental unit holding a post-petition Claim arising out of taxes assessed against property of the estate, also including "ad valorem property taxes," but limited as provided by Section 502(b)(3) of the Code, shall be paid in full when said Claims are due.

## ARTICLE 4
## DIVISION OF CREDITORS INTO CLASSES

4.1    Classification of Claims:  This Classification of Claims is made for purposes of voting on this Plan, making distributions thereunder, and for ease of administration thereof.  Unless specifically provided otherwise herein, on the Confirmation Date this Plan discharges and extinguishes all Claims and Debts against the Debtor of whatever character, whether allowed by the Court or otherwise.

4.2    **Class 1**:    Consists of **Allowed Administrative Claims Attorney fees and US Trustee Fees (**Not Impaired)
**Class 2**:    Consists of **Allowed Property Tax Claims**  (Impaired)
**Class 3**:    Consists of **Allowed Priority §507(a)(4) Claimants** (Impaired)
**Class 4**:    Consists of **Allowed Secured Creditors** (Impaired)
**Class 5**:    Consists of **Allowed Olympia Minerals Leasing, LLC and Olympia Minerals, LLC Claims**  (Impaired)
**Class 6**:    Consists of **Allowed Euramerica Gas & Oil Corp. and Petrobridge Starks #1 Joint Venture Claimants** (Impaired)
**Class 7**:    Consists of **Allowed Jonathan Thayer, Charles Gale, William Duvall, Pecos Financial, and Peter McGuire Claims** (Impaired)

  **Class 8**:  Consists of **Allowed Unsecured Claims** (Impaired)
  **Class 9**:  Consists of **Allowed Current Investors Claimants** (Impaired)
  **Class 10**:  Consists of **Allowed Equity Holders** (Not Impaired)

## ARTICLE 5
## TREATMENT OF CLASSES

 5.1 Satisfaction of Claims and Debts: The treatment of and consideration to be received by holders of Allowed Claims or interests pursuant to this Article of this Plan shall be in full settlement, release and discharge of their respective Claims, Debts, or interests as against the Debtor subject to the provisions herein. On the Confirmation Date, the Reorganized Debtor shall assume all duties, responsibilities and obligations for the implementation of this Plan.

 5.2 **Class 1 Claimants (Allowed Administrative Claims of Professionals, US Trustee and James Ryan)** are unimpaired and will be paid in cash and in full on the Effective Date of this Plan. Professional fees are subject to approval by the Court as reasonable. Debtor's attorney's fees approved by the Court and payable to the law firm of Eric Liepins, P.C. will be paid immediately following the later of Confirmation or approval by the Court out of the available cash. James Ryan ("Ryan") has asserted an Administrative Claim in the amount of $23,000 for funds advanced on behalf of the Debtor during the bankruptcy. In the event such claim is allowed, Ryan's Administrative Claim will be paid has a Class 1 claim. This case will not be closed until all allowed Administrative Claims are paid in full. It is anticipated the Class 1 Claims will not exceed $50,000 including Section 1930 fees. Section 1930 fees shall be paid in full prior to the Effective Date. The Debtor is required to continue to make quarterly payments to the U.S. Trustee and shall be required to file post-confirmation operating reports until this case is closed. The Class 1 Claimants are not impaired under this Plan.

 5.3 **Class 2 Claimants (Allowed Ad Valorem Tax Claims)** are impaired and shall be satisfied as follows: The Allowed Ad Valorem Tax Creditor Claims shall be paid out of the revenue from the continued operations of the business to the Louisiana Department of Revenue ("LDR"). The LDR has filed three (3) Proof of Claim for a total alleged debt of $36,022.20. The Debtor disputes this amount. In the event the LDR Claim is an Allowed Claim for priority taxes, such claim will be paid in full with interest at the rate of 12% per annum. The Allowed Claims of LDR shall be paid in full within 60 months of the Petition Date from the continued operations of the Debtor. Calcasieu Parish Sheriff & Tax Collector ("Calcasieu") has filed a Proof of Claim in the amount of $54,363.94. To the extent this claim is allowed, this claim will be paid in full on the Effective Date by Bushwood. The Taxing Authorities shall retain their statutory senior lien position regardless of other Plan provisions, if any, to secure their Tax Claims until paid in full as called for by this Plan. Debtor may pre-pay any Class 2 Claimant without penalty.

 Class 2 Claimants are impaired under this Plan.

 5.4 **Class 3 Claimants (Allowed Priority §507(a)(4) Claimants)** are impaired and shall be satisfied as follows: The following persons have purported to assert Employee Claims under 11 U.S.C. §507(a)(4); Mark Moore, Lance Sharbino, Chance Doucel, Roger Peveto, Morgan Vallery

and Matthew Estridge (collectively "Class 3 Claimants"). The Class 3 Claimants have asserted claims in the amount of $12,850 each. The Debtor disputes that any of the Class 3 Claimants have valid claim pursuant to 11 U.S.C. §507(a)(4), however, to the extent any Class 3 Claimant has such Allowed Claim, it will be paid in full in sixty (60) equal monthly payments commencing the latter of the Effective Date or thirty (30) days have a final non-appeal determination of such claim. The Class 3 Claimants shall be paid from the continued operations of the Debtor. Debtor may pre-pay any Class 3 Claimant without penalty.

Class 3 is impaired under this Plan.

5.5 **Class 4 Claimant (Allowed Secured Creditors)** are impaired and shall be satisfied as follows: The following creditors have filed liens against the Debtor for services preformed: DOC Services, Inc. For $17,842.64, Costal Pipe of Louisiana, Inc. for $10,204.15, Hadley Energy Services, LLC for $90,105.10 and Pioneer Wireline Services, LLC for $31,994 ("collectively "Secured Creditors"). To the extent that the Secured Creditors have Allowed Claims, the Secured Creditors will be paid in full with interest at th rate of 5% per annum commencing on the Effective Date in 60 equal monthly payments. The Secured Creditors shall retain their current liens until paid in full in accordance with the terms of this Plan. Debtor may pre-pay any Class 4 Claimant without penalty.

The Class 4 creditor is impaired.

5.6 **Class 5 Claimants (Allowed Claims of Olympia Minerals Leasing, LLC and Olympia Minerals, LLC)**. Effective August 1, 2016, the Debtor and Olympia Minerals, LLC ("OM") entered into that certain Paid Up Oil, Gas & Mineral Lease ("Lease") covering certain mineral acreage in certain land located in the Starks Oil and Gas Field in Calcasieu, Louisiana ("Starks Field"). Effective August 1, 2016 the Debtor and Olympia Minerals Leasing, LLC ("OML") entered that certain Partial Paid Up Sublease ("Sublease") concerning the Starks Field. A dispute arose between the Debtor, OM and OML, wherein OM and OML asserted that the Lease and Sublease have terminated. The Debtor's sole source of income was from the operations and ownership from the Stakes Field. Litigation was started between OM, OML and the Debtors, and others, in both Louisiana and Texas. The Texas matter is currently pending before the Bankruptcy Court as Adversary Proceeding 19-03013. Pursuant to the terms of the Plan, as more fully set forth below, OM and OML will have no claims in the Debtor's bankruptcy estate, and all litigation in both Louisiana and Texas concerning the matters in dispute under the Lease, Sublease and/or Starks Field shall be dismissed with prejudice upon confirmation of the Plan.

The Class 5 Claimants are impaired under this Plan.

5.7 **Class 6 Claimants (Allowed Claims of Euramerica Gas & Oil Corp. and Petrobridge Starks #1 Joint Venture)** are impaired and shall be satisfied as follows: Euramerica Gas & Oil Corp. ("Euramerica") and Petrobridge Starks #1 Joint Venture ("Petrobridge") have each filed a Proof of Claim asserting ownership interests in Debtor's interest in certain portions of the Stark Field. The Debtor disputes the ownership claims of both Euramerica and Petrobridge, however,

as part of the Plan, the individuals who are part of the Petrobridge Joint Venture, as well as Euramerica shall be entitled to share in the New Lease Agreement more fully set forth below. As part of the Plan, the current litigation styled Euramerica Gas & Oil Corp, v. Britlind Oil, LLC, et al., case 3:18-cv-00317-M, in the United States District Court for the Northern District of Texas, Dallas Division shall be dismissed with prejudice upon confirmation of the Plan.

The Class 6 Claimants are impaired under this Plan.

5.8  **Class 7 Claimants (Allowed Claims of Jonathan Thayer, Charles Gale, William Duvall, Pecos Financial, and Peter McGuire**) are impaired and shall be satisfied as follows: Jonathan Thayer, Charles Gale, William Duvall, Pecos Financial, and Peter McGuire each purchased interests in the Debtor's interest in the Starks Field. As part of the Plan, Jonathan Thayer, Charles Gale, William Duvall, Pecos Financial, and Peter McGuire shall be entitled to share in the New Lease Agreement more fully set forth below.

The Class 7 Claimants are impaired under this Plan.

5.9  **Class 8 Claimants (Allowed Unsecured Claims)** are impaired and shall be satisfied as follows: The Unsecured Creditors[1] will share pro-rata in the Unsecured Creditor's Pool. The Debtor shall pay into the Unsecured Creditors Pool an amount equal to 75% of the net income received by the Debtor under the New Lease Agreement for a period of 60 months commencing 90 days after the Effective Date. The Debtor shall make payments into the Unsecured Creditors Pool for a period of 60 months or until the Allowed Unsecured Creditors have been paid in full whichever comes first.

The Class 8 creditors are impaired under this Plan.

5.10  **Class 9 Claimants (Current Investors)** are impaired under the Plan and shall be satisfied as follows: The current investors shall be entitled to share in the New Lease Agreement as set forth below.

The Class 9 Claimants are impaired under this Plan.

5.11  **Class 10 Claimants (Current Ownership)** are not impaired under this Plan and will be allowed to maintain their ownership interest in the Debtor.

The Class 10 interests are not impaired under this Plan.

---

[1] The Unsecured Creditor Class will include any Class 3 Creditor Claim not allowed as a priority claim.

# ARTICLE 6
# MEANS FOR EXECUTION OF THE PLAN

6.1 **Action to be taken:** Any actions required to be taken by the Debtor on the Effective Date may be taken by the Debtor before the Effective Date or immediately following the date of Final Confirmation.

6.2 **Ongoing Operations:** The Debtor's obligations under this Plan will be satisfied out of the ongoing operations of the Reorganized Debtor and the New Lease Agreement. The income projections of the Reorganized Debtor are attached to the Disclosure Statement. The Debtor believes the projections to be accurate based upon historical levels of production.

6.3 **New Lease Agreement**: Bushwood Minerals, LLC[2] shall purchase the mineral servitude from OM and OML for the Starks Field. The current Lease and Sublease shall be deemed terminated. A new lease agreement ("New Lease Agreement") will be executed between Bushwood Minerals, LLC and Bushwood Leasing, LLC.

Pursuant to the terms of the New Lease Agreement, the Debtor's working interest will be reduced to 25%. The creditors in Classes 6, 7 and 9 will receive working interests under the New Lease Agreement as follows:

| NAME | NEW LEASE INTERESTS |
|---|---|
| Alfred W. Short Trust | 0.0515625 |
| Gerald Simonson | 0.0515625 |
| Jerry Maier | 0.0515625 |
| Jesse James Gonzales | 0.0515625 |
| Clifford E Hoelscher | 0.103125 |
| Earnest Clark | 0.103125 |
| Justin P. Wilber | 0.103125 |
| Tanglewood Equities L.P. | 0.103125 |
| Marty Turco | 0.154688 |
| James Macek | 0.165 |

---

[2]Bushwood Minerals, LLC is a Texas Limited Liability Company owned by Jonathan Thayer, Charles Gale, William Duvall, Pecos Financial, Fossil Fuels of LA and Peter McGuire.

| | |
|---|---|
| Gene Eckle | 0.20625 |
| Terrence D. Morton | 0.20625 |
| Vernon Govender | 0.226875 |
| Andrew & Mary Ann Heller | 0.2475 |
| Jon Beerbohm | 0.268125 |
| Gary Nolan | 0.4125 |
| ADS Family Limited Trust | 0.4640625 |
| Frank Janusz | 0.825 |
| Craig Blaesing | 0.928125 |
| Sandra Dodge | 1.340625 |
| Caprock Oil & Gas Fund LP | 2.75 |
| Charles Gale | 7.584597254 |
| Fossil Fuels of LA | 2.5 |
| John Fischer | 0.75 |
| Jonathan Thayer | 16.41705665 |
| Mark Rubin | 1.6875 |
| Paul H. Boeing | 0.75 |
| Pecos Financial Co. | 12.35163675 |
| Peter McGuire | 11.55966209 |
| Renate Reeder Trust | 0.1875 |
| Ryvers G. Reeder Trust | 1.50 |
| Sean & Yuka Byers | 0.1875 |
| Tommy Dodge | 1.875 |
| William Duvall II | 7.3357797254 |
| EOG | 1.5 |
| Britlind Oil | 25 |

All participants in the New Lease Agreement shall be required to execute documents

requested by Bushwood Leasing. It is anticipated these documents may include a new Joint Operating Agreement, a Subscription Agreement, Assignments and/or Releases.

As set forth above, the Debtor's working will be reduced from 60% to 25%. The Debtor shall use the funds generated from its 25% Working Interest under the New Lease Agreement to make the payments to the creditors in Classes 1, 2, 3, 4, and 8.

6.4     Notwithstanding anything contained herein, the Reorganized Debtor shall have the right to request the Court to disallow any claim of any Entity from which property is recoverable under Sections 542, 543, 550, and 553 of title 11, or that is a transferee of a transfer avoidable under Sections 544, 545, 548, or 549 of title 11 unless such Entity or transferee has paid the amount, or turned over any such property, for which such Entity or transferee is liable.

## ARTICLE 7
## SECTION 1129(b)(2)

7.1     The Court may confirm this Plan even though less than all of the Classes of Claims and interests accept it.  The requirements for confirmation of a plan over the objection of one or more classes of claims or interests are set forth in Section 1129(b) of the Code. Accordingly, Debtor, as the plan proponent, requests the Court to determine that this Plan does not discriminate unfairly, and is fair and equitable with respect to the rejecting creditor.

## ARTICLE 8
## STATUS OF EXECUTORY CONTRACTS

8.1     All unexpired leases and executory contracts shall be assumed on or before the Effective Date.  To the extent there are any unexpired leases or executory contracts, which have not been assumed or dealt with in this Plan prior to the Effective Date, they are rejected.

## ARTICLE 9
## EVENTS OF DEFAULT AND EFFECT THEREOF

9.1     In the event that Substantial Consummation of this Plan does not occur on or before the earlier of the Effective Date or 71 days after the Confirmation Date, the Order of Confirmation may be vacated by any party in interest, other than the Debtor.

9.2     Unless expressly provided herein to the contrary, no Claimant shall have the right to enforce any rights under this Plan until the Reorganized Debtor fails to cure any default hereunder within thirty (30) days of receipt of written notice of such default to Reorganized Debtor

9.3. Default shall occur if one scheduled Plan payment is not made by Debtor or if current taxes are not timely paid pursuant to state law. In the event of default, any party in interest who has not received their required payment, shall send written notice of default as set forth in section 9.2 above. Any notice of default sent by ad valorem taxing authorities, under the Plan may be sent to Michael Bezdek 214-733-04235. In the event the default of payment to the ad valorem taxing authorities is not cured within twenty (20) days of the date of the facsimile, ad valorem taxing authorities may proceed to collect all amounts owed pursuant to state law outside of the Bankruptcy Court. The ad valorem taxing authorities shall not be required to give more than two notices of default. Upon the third event of default, the ad valorem taxing authorities shall be able to collect all amounts pursuant to state law outside of the Bankruptcy Court. Notwithstanding anything in this Plan to the contrary, the Bankruptcy Court shall not retain jurisdiction with respect to any tax claims except for (i) resolving the amount of any such tax claim arising prior to confirmation, and (ii) enforcing the discharge provision of the Plan.

## ARTICLE 10
## DISCHARGE

10.1 Upon Confirmation, to the extent that a Claim or Debt has not been dealt with under this Plan, such Claim or Debt will be released.

10.2 The automatic stay imposed by Section 362 of the Code or any preliminary injunction granted by the Court to allow for Substantial Consummation of this Plan shall remain in effect until the Effective Date.

## ARTICLE 11
## AMENDMENTS TO THE PLAN

11.1 Debtor may modify this Plan following Confirmation and before Substantial Consummation to the extent consistent with the requirements of section 1122 and 1123 of Title 11. The Plan as modified becomes the Plan if circumstances warrant modification and the Court approves of such modifications.

11.2 In the event of modification of this Plan pursuant to Section 11.1, any holder of a Claim or interest that has accepted or rejected this Plan is deemed to have accepted or rejected, as the case may be, the Plan as modified, unless, within ten (10) days of service of the Plan modifications upon such holder, such holder changes its previous acceptance or rejection.

## ARTICLE 12
## EFFECT OF CONFIRMATION

12.1     The provisions of this Plan bind Debtor, any Entity issuing securities under this Plan, any Entity acquiring property under this Plan, and any Creditor or Equity Interest Holder, whether or not the Claim or interest of such Creditor or Equity Interest Holder is impaired under the Plan and whether or not such Creditor or Equity Interest Holder has accepted this Plan.

12.2     All property of the estate shall vest in the Reorganized Debtor upon Final Confirmation.

12.3     All property of the Reorganized Debtor is free and clear of all Claims and interests of Creditors and Equity Interest Holders, except as to claims, secured claims or secured debentures and interests specifically granted in this Plan.

12.4     All Debts that arose before the Confirmation Date and any Debt of a kind specified in Section 502(g), 502(h) or 502(i) of the Code, whether or not a proof of claim based on such Debt is filed or deemed filed under Section 501, whether or not such Claim is allowed under Section 502; and whether or not the holder of such Claim has accepted this Plan; are, fully and finally satisfied by this Plan.

## ARTICLE 13
## MISCELLANEOUS PROVISIONS

13.1     The obligations under this Plan to any particular Claim are governed by the laws of the State constituting the situs of the Debt represented by that particular Claim described in this Plan.

13.2     Equity Interest Holders are relieved from all liability, obligation or duty to initiate or pursue any causes of action of Debtor against any Entity.

13.3     Any caption herein is for convenience only and does not affect the construction of the Plan.

13.4     Any distribution pursuant to this Plan which remains unclaimed for a period of six (6) months from the due date of such distribution is forfeited.

## ARTICLE 14
## RETENTION OF JURISDICTION

Until this case is closed, the Court retains jurisdiction of the following matters only:

14.1     To direct any necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a Transfer of property dealt with by the Plan and to perform any other act, including the satisfaction of any Lien, that is necessary for the consummation of this Plan.

14.2     To allow or disallow Claims.

14.3     To hear and determine all Claims arising from the rejection of executory contracts and unexpired leases which are included in Debtor's estate and to consummate rejection and termination thereof in connection with Debtor's estate and/or implementation of the Plan.

14.4     To liquidate damages or estimate Claims in connection with any disputed, contingent or unliquidated Claims.

14.5     To adjudicate all Claims to an ownership interest in any property of Debtor's estate.

14.6     To recover all assets and properties, including by lawsuit, of Debtor's estate wherever located.

14.7     To hear and determine Claims concerning Federal, State and local taxes pursuant to Section 346, 505, 525 and 1146 of the Code.

14.8     To hear and determine any action or proceeding brought by Debtor or the Reorganized Debtor under Section 510, 542, 543, 544, 545, 547, 548, 549, 550, 551 and 553 of the Code, whether such action or proceeding is brought before or after the Effective Date.

14.9     To hear and determine any core proceeding, whether such proceeding is brought before or after the Effective Date.

14.10    To determine the validity, extent and priority of all Liens and security interests against property of Debtor's estate.

14.11    To consider any modification of this Plan under Section 1127 of the Code or under Bankruptcy Rule 3020 and/or modification of this Plan after Substantial Consummation as defined herein.

14.12    To hear and determine all requests for compensation and/or reimbursement of expenses of professionals.

14.13    To hear and determine Reorganized Debtor's requests for orders as are consistent with this Plan as may be necessary or desirable to carry out the provisions thereof.

14.14 To enter an order closing this case. The Debtor shall attempt to close the case within 6 months of the Effective Date.

                                          Respectfully submitted,

                                          Britlind Oil, LLC.

                                          /s/ Michael Bezdek
                                        By: Michael Bezdek
                                        Its: Managing Member

ERIC LIEPINS, P.C.
ERIC LIEPINS
12770 Coit Road
Suite 1100
Dallas, Texas 75251
(972)991-5591
(972) 991-5788 - telecopier